## DAMPIER v. UNITED STATES.

(Circuit Court of Appeals. Ninth Circuit. November 3, 1924. Rehearing Denied January 5, 1925.)

### No. 4276.

1. **Post office** 49—**Evidence held to sustain conviction for mailing unmailable matter.**

In a prosecution under Criminal Code, § 211 (Comp. St. § 10381), for mailing unmailable matter, evidence *held* sufficient to warrant a finding that defendant was the person who mailed the offensive letters.

2. **Criminal law** 1038(3), 1056(1)—**Failure to instruct on issue not reviewable, in the absence of request or exception.**

That the court did not instruct on an issue does not raise any question for review, in the absence of request for such instruction or exception to the charge given.

3. **Criminal law** 1169(2)—**Admission of evidence in prosecution for mailing unmailable matter not prejudicial.**

In a prosecution for mailing prohibited matter, where there was a discrepancy between the contents of a letter and the date as shown by the postmark, testimony that mistakes were sometimes made in the date of the postmark was of a matter of common knowledge, and its admission not prejudicial.

4. **Criminal law** 1169(1)—**Post office** 49—**Admission of testimony as to mailing prohibited matter held unimportant, and not prejudicial.**

In a prosecution for mailing prohibited matter, testimony that letters placed in rural delivery boxes would bear later postmark dates than those placed in city delivery boxes *held* unimportant, and not prejudicial.

5. **Criminal law** 1037(1), 1045—**Remarks of counsel, not objected to, not assignable as error.**

Remarks of counsel in argument, not objected to nor ruled on, are not assignable as error.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Criminal prosecution by the United States against E. R. Dampier. Judgment of conviction, and defendant brings error. Affirmed.

W. G. Bissell, of Gooding, Idaho, and Homer C. Mills, of Twin Falls, Idaho, for plaintiff in error.

E. G. Davis, U. S. Atty., and James F. Ailshie, Jr., Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The indictment in this case, containing five counts, was returned under section 211 of the Criminal Code, as amended by section 2 of the Act of March 4, 1911, 36 Stat. 1339 (Comp. St. § 10381). Each count sets forth a copy of a letter deposited in the United States post office, at Rupert, Idaho, for mailing and delivery. Upon the trial the jury returned a verdict of guilty as to all counts, a motion for a new trial was denied, and the judgment is now before us on writ of error.

[1] The plaintiff in error first challenges the legal sufficiency of the testimony to support the verdict. At the outset it was conceded that at least one of the indictment letters falls within the prohibition of the statute, and that the several letters were mailed as charged. The only remaining question is: Did the plaintiff in error mail the letters? The more important testimony bearing upon that issue consisted of the several indictment letters, two letters written to plaintiff in error, and three telephone communications.

The first letter, mailed November 16, 1922, delivered on the following day, after setting forth the obnoxious matter complained of, requested the recipient to wear her red hat when going to work for the next two or three days. The second letter, mailed November 20, 1922, delivered November 23, 1922, referred to the fact that the recipient had worn the red hat as requested, stated that she had perhaps a suspicion as to the identity of the writer, and suggested that she drop him a line stating what she thought of the proposal contained in the first letter. The second letter closed with the further request that the recipient wear a certain black and white checked skirt on the coming Friday and Saturday, and allow her coat to hang open, so that it could be seen.

The third letter, postmarked November 22, 1922, delivered November 26, 1922, referred to the fact that the recipient had worn the red hat and the black and white skirt as requested, and suggested that she write a letter, expressing herself fully, and mail it to one Hardy, at Burley, Idaho, marked "Personal," inclosing the letter in a smaller envelope on which there should be no address, only the words, "to be forwarded." On November 26, 1922, the recipient of the above letters mailed to the plaintiff in error a letter saying: "I believe that I know; Do I? If so, answer." The fourth letter, mailed on November 29, 1922, delivered on the same day, stated that reports from Burley were to the effect that no letter had been mailed to Hardy. The letter contained this further statement: "Assume for the time being that you know who you are writing to. Assume that you have dropped a line to some one, saying that you believed you knew." This, it will be observed, is almost the exact language of the letter written by the recipient to the

plaintiff in error a few days before. On November 30, 1922, the recipient of the above letters mailed to Hardy, at Burley, a letter, enclosed as requested, asking, among other things, the reason for writing all the letters, inasmuch as both parties lived in the same town.

On December 1, 1922, the last of the indictment letters was mailed. It acknowledged receipt of the letter sent to Burley, and stated, among other things: "You ask my reason for writing you letters, and say you are unable to understand why I write, when we live in the same town." This letter also referred to two telephone calls, and stated that the writer was sorry, and would not call again. It will be noticed, therefore, that the writer of this letter was at least familiar with the contents of the letter written to Burley, and the plaintiff in error admits the receipt of that letter. It further appeared that, prior to the date of this letter, the recipient had two telephone conversations with some person whose voice she could not identify; but she testified, at the trial, that the voice was similar to the voice of the plaintiff in error, with whom she admittedly conversed over the telephone a few days later. In addition to this there was expert testimony tending to show that one of the indictment letters was written on a typewriter in the office of the plaintiff in error. Without referring, then, to the oral testimony and other circumstances which tend to corroborate the written testimony, it is entirely plain that the person who wrote the indictment letters, the person who received the letters written by the recipient, and the person with whom she conversed over the telephone, was one and the same. For these reasons, the claim that the testimony is not sufficient to support the verdict is without merit.

[2] It is next contended that the court erred in ignoring the defense of alibi. It would, perhaps, be more correct to say that all parties concerned ignored it, as there was no exception to the charge of the court, and no request for an instruction on that or any other issue in the case. In the absence of such a request, there is no question before us for review.

[3] It is next contended that the court erred in admitting testimony as to mistakes in the dates of postmarks. There was a discrepancy between the date of the postmark on one of the indictment letters and the contents of the letter itself. Thus the letter mailed on November 20, which fell on Monday, requested the recipient to wear the black and white skirt on the following Friday and Saturday, or on November 24 and November 25; whereas the letter bearing the postmark of November 22 referred to the fact that the recipient had worn the skirt as requested, although the date upon which she was to wear it had not yet arrived. To explain this discrepancy the government called one of its post office inspectors, who testified, over objection, that mistakes in postmarks are sometimes made, though not often. The admission of this testimony is assigned as error. It was competent for the government to prove the true mailing date, regardless of the postmark on the letter, and regardless of the date averred in the indictment, and while the proffered testimony had no tendency to prove either the true date or that a mistake was in fact made, it did leave the jury at liberty to find the true date, from all the facts and circumstances. The court might have so charged the jury, in the absence of the testimony in question, for that testimony simply tended to show that post office employees, like all other human agencies, are not infallible, and that mistakes sometimes occur. This, we think, is a matter of common knowledge, requiring no proof.

[4] In rebuttal, the government offered testimony tending to show that there were rural mail boxes and city delivery boxes within the city, and that letters dropped into these boxes on one day would bear the postmark of the following day. The admission of this testimony is assigned as error. There are so many ways in which a letter can find its way into the mail that proof of one or more additional ways was of little or no importance, and could not be prejudicial. The court admitted in evidence certain letters written on a typewriter in the office of the plaintiff in error, for purposes of comparison. The admission of this testimony is also assigned as error. It is a sufficient answer to this to say that the testimony was admitted without objection.

The government offered in evidence a certain conversation between the plaintiff in error and the post office inspectors, and it is now claimed that the court erred in refusing to admit the entire conversation. The record presents no such question. The government offered in evidence one conversation, and the plaintiff in error sought to bring out an entirely different conversation, had at a different time and a different place.

It is next contended that the court erred in admitting in evidence certain telephone conversations between the person to whom the letters were addressed and some third person, without connecting the plaintiff in

error therewith. The person to whom the letters were addressed, however, testified that she had a later conversation with the plaintiff in error, and expressed the opinion that the voice was the same. Whether, therefore, the first conversations were with the plaintiff in error was for the jury to determine, from the statements in the letters and from all the surrounding circumstances. The plaintiff in error further offered evidence tending to show that there was a town row in Rupert in 1917 and 1918; that there were certain people in Rupert who were determined to destroy the plaintiff in error; that they had fomented trouble in his family; that they had sought to have him arrested on criminal charges; that they had gone to the extent of hiring detectives and lawyers; that they had his office dictaphoned; that they had falsely imprisoned him; and that the postmistress at Rupert had wired the department in an endeavor to have him prosecuted for crime. No attempt was made to connect any of the witnesses in this case with this so-called conspiracy, and the testimony was too remote for any purpose.

[5] We cannot consider the assignment based on the misconduct of counsel for two reasons: First, the language complained of is not embodied in the bill of exceptions under the certificate of the trial judge; and, second, no objection was interposed to the argument when made. There was no ruling of the court thereon, and, of course, no exception.

It is lastly contended that the court erred in denying a motion for a new trial. Aside from the fact that such a motion is addressed to the discretion of the trial court, it was based largely upon the rulings which we have already considered.

We have now reviewed all the assignments, regardless of the state of the record, and, finding no error, the judgment is affirmed.